UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAYLEN ASHBY,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

Case No. 1:16-cv-11829
District Judge Thomas L. Ludington
Magistrate Judge Anthony P. Patti

## <u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 16), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) and AFFIRM THE COMMISSIONER'S DECISION</u>

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 16), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.     REPORT**

      Plaintiff, Jaylen Ashby, brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") disallowing disability benefits under the Social Security Act.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 16), the

Commissioner's cross motion for summary judgment (DE 17) and the administrative record (DEs 8-10).

## A. Background

Plaintiff received SSI benefits as a child, based on based on a seizure disorder, but "now alleges disability due to having asthma." (R. at 34, 37, 38, 311; *see also* R. at 49.) He turned 18 years old on November 8, 2011, at which time his eligibility for benefits was redetermined. (R. at 14, 16.) It seems that, on October 24, 2011, just before his 18th birthday, Plaintiff's mother sought a redetermination that Plaintiff was entitled to continuing eligibility for SSI payments. (R. at 40-48, 53-61.) It further appears that, on January 26, 2012, disability examiner Michael B. Sullivan requested review by an agency medical consultant. (R. at 34.) On February 6, 2012, Muhammad Mian, M.D., completed an SSA physical RFC assessment form. (R. at 288-295, 34-35.) Two days later, on February 8, 2012, the Social Security Administration (SSA) determined that Plaintiff no longer qualified for supplemental security income (SSI). (R. at 35, 49-52.)

Plaintiff apparently filed an appeal on or about February 23, 2012. (R. at 189-190.) On November 13, 2012, Muhammad Ahmed, M.D. completed an SSA physical RFC assessment form. (R. at 309, 310-317.) It appears to have been received on November 14, 2012 by disability examiner Vivian Walker. (R. at 36-

38.)  Still, on February 6, 2014, disability hearing officer Christine J. Constance

determined that Plaintiff was not disabled.  (R. at 39, 62-70.)

On February 20, 2014, Plaintiff requested a hearing by an administrative law

judge (ALJ).  (R. at 71-74.)  ALJ Xenos held a hearing on August 21, 2014, at

which Plaintiff was present; however, he did not testify.  (R. at 29-33.)[1]  ALJ

Xenos held another hearing on November 25, 2014, at which Plaintiff (represented

by counsel), Plaintiff's mother (Linda Ashby) and a vocational expert Harry

Cynowa (VE) testified.  On December 29, 2014, ALJ Xenos issued an unfavorable

decision.

Plaintiff requested review of the hearing decision.  On March 17, 2016, the

Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Plaintiff then

timely commenced the instant action.

### B.  Plaintiff's Medical History

Plaintiff's combined medical records span the period from June 2000

through December 2014. (R. at 235-775.)  These 541 pages include many

treatment records, but also include:  the February 6, 2012 physical RFC assessment

of Muhammad Mian, M.D. (R. at 288-295); the November 1, 2012 consultative

examination (CE) report of internist Bina Shaw, M.D. (R. at 301-307); and, the

---

[1] A hearing was scheduled for November 4, 2014.  (R. at 103-121.)  On that date,
Plaintiff appointed a representative.  (R. at 122.)

November 13, 2012 physical RFC assessment of Muhammad Ahmed, M.D. (R. at 310-317.)

Of particular import in this case are those medical records received by the SSA *after* the November 2012 opinions – namely the 458 pages comprising Exhibits 14F through 23F (R. at 318-775). These will be discussed in further detail as necessary below.

### C. Hearing Testimony

As noted above, more than one hearing occurred in Plaintiff's case. However, it is the November 25, 2014 hearing before ALJ Xenos (R. at 776-806) and her subsequent December 29, 2014 decision (R. at 11-28) which are the subjects of the instant appeal. As Plaintiff's credibility is not an issue currently before this Court, I will forego a summary of his testimony here and only cite it as necessary below.

### D. The Administrative Decision

On December 29, 2014, ALJ Xenos issued her "unfavorable" decision. (R. at 11-28.) As an initial matter, **Step 1** of the sequential evaluation process[2] is not

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

used, where, as here, there is a redetermination of disability at age 18.  20 C.F.R. §

416.987(b).  (R. at 15.)  Also, the ALJ's findings were made as of February 8,

2012 – the date the SSA found Plaintiff no longer disabled.  (R. at 15-16.)

At **Step 2**, the ALJ found that Plaintiff has had the following severe

impairments:  scoliosis, asthma, Tourette's syndrome, attention deficit disorder,

and obsessive-compulsive disorder.  (R. at 16.)  At **Step 3**, the ALJ found that

Plaintiff has not had an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments.  (R. at 16-18.)  Prior

to **Step 4** of the sequential process, the ALJ determined that Plaintiff has had the

residual functional capacity ("RFC")[3] to perform the exertional limitations of

sedentary work (with only occasional operation of foot/leg controls and a need to

---

| 2. | Does the claimant suffer from one or more severe impairments? |
| 3. | Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1? |
| 4. | Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work? |
| 5. | Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy? |

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573
F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

alternate between sitting and standing at will at the workstation), with certain other postural, environmental, and manipulative limitations, and with the further limitation of "simple, routine work with minimal changes in the work setting." (R. at 18-21.) At **Step 4**, the ALJ concluded that Plaintiff has no past relevant work. (R. at 21.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 21-22.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

Plaintiff claims that the ALJ erred by failing to:  **(1)** obtain an updated opinion by a medical advisor or obtain a medical advisor's opinion at the hearing; **(2)** comply with SSR 96-8p and SSR 85-15; and **(3)** include SSR 96-8p's "function-by-function assessment."  (DE 16 at 14-22.)  The Commissioner opposes Plaintiff's motion, arguing that substantial evidence supports the Commissioner's decision.  (DE 17 at 1-2, 7-21.)

I will address each argument in turn.

### 1.    Whether an "updated medical expert opinion" was required?

Plaintiff argues that the ALJ erred by not obtaining an updated medical expert opinion or not obtaining such an opinion at the November 25, 2014 hearing, when more than 450 pages of medical records – namely Exhibits 14F through 23F– were added to the administrative record following the November 2012 reports and opinions from Dr. Shaw and Dr. Ahmed (R. at 318-775, R. at 301-317), and, given the "complicated medical issues involved."  (DE 16 at 14-16.)[4]

_____

[4] To be sure, the Commissioner admits that the SSA received Exhibits 15F through 23F after Dr. Shaw's examination.  (DE 17 at 8.)  As the Court Transcript Index

The Social Security Ruling (SSR) governing this issue provides that "[a]n *updated* medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical *equivalence* can be made." SSR 96-6P (S.S.A. July 2, 1996) (emphases added). Such an opinion is required:

> When no additional medical evidence is received, but *in the opinion of the administrative law judge or the Appeals Council* the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

> When additional medical evidence is received that *in the opinion of the administrative law judge or the Appeals Council* may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p (emphases added). In other words, "SSR 96-6p vests the discretion to obtain an updated medical opinion solely in the 'opinion' of the ALJ." *Sharay v. Comm'r of Soc. Sec.*, No. 15-12531, 2016 WL 8114220, at *10 (E.D. Mich. Aug. 28, 2016), *report and recommendation adopted sub nom. Sharay v. Colvin*, No. 15-12531, 2016 WL 5539791 (E.D. Mich. Sept. 30, 2016). Furthermore, the Social Security Ruling provides:

> When an updated medical judgment as to medical *equivalence* is required at the administrative law judge level in either of the circumstances above, the administrative law judge must call on a

---

indicates, these records span a period from May 26, 2009 through December 8, 2014. (DE 9-1 at 3, R. at 319-775.) In other words, some pre-date and some post-date Drs. Shaw and Ahmed's November 2012 records. (DE 17 at 8.)

medical expert. When an updated medical judgment as to medical *equivalence* is required at the Appeals Council level in either of the circumstances above, the Appeals Council must call on the services of its medical support staff.

SSR 96-6p (emphases added).

Although Plaintiff does not specify which aspect of the RFC he is challenging, his argument that neither Dr. Shaw nor Dr. Ahmed "reviewed the objective medical evidence supportive of a finding of a Listing pursuant to 1.04[,]" (DE 16 at 15), which is the Listing for "Disorders of the Spine," leads the Undersigned to believe that Plaintiff is challenging the ALJ's Step 3 conclusion that his back impairment does not meet a Listing such as 1.04 and/or the Step 4 RFC exertional and/or postural limitations. In either case, the Court should affirm the Commissioner's decision on this issue.

### a. Step 3 - Listing 1.04 ("Disorders of the spine")

Plaintiff does not present a convincing argument that the additional 458 pages of medical records had an effect upon the ALJ's Step 3 Listings conclusion. To begin, the Commissioner contends that Plaintiff did not argue at the administrative level that he had an impairment "equal in severity to any listed impairment." (DE 17 at 9.) This appears to be true, as the February 6, 2014 disability hearing officer concluded that Plaintiff's impairments do not meet or equal a current listed impairment (R. at 65), the issue does not appear to have been raised during the November 25, 2014 hearing (R. at 776-806), the ALJ's December

29, 2014 decision concludes that Plaintiff's impairments do not meet or equal the severity of one of the listed impairments (R. at 16), and Plaintiff's July 9, 2015 brief to the Appeals Council with respect to the "updated opinion" issue does not contain a developed listings argument (*see* R. at 228-229). If Plaintiff did not make a listings argument below, he may be considered to have waived the opportunity to do so here. *See Walker v. Barnhart*, 72 F. App'x 355, 357 (6th Cir. 2003) ("Because Antonio did not assert a disability claim under listing 112.05 Mental Retardation, he was not entitled to an award of benefits under that listing.").

In addition, the statement that the objective medical evidence not reviewed by Drs. Shaw and Ahmed – namely Exhibits 14F-23F - is "supportive of a finding of Listing pursuant to 1.04[,]" (DE 16 at 15), is anemic, failing to identify a specific page of this extensive record or explain how it supports a listing or an equivalency argument. The Court has no affirmative duty to go through an extensive medical record with a fine-toothed comb to find support for a party's arguments. "[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder,* 90 F.3d 1110, 1118 (6th Cir.1996)). As such, he has not met his burden on this issue. *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831

(6th Cir. 2009) (Plaintiff "has not shown that the ALJ erred in failing to obtain an updated medical expert opinion."); *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012) ("Claimant thus must demonstrate either that the school records suggest that she qualified as mentally retarded under Section 12.05 or that the ALJ believed the school records may have changed the experts' findings."); *Freeman v. Comm'r of Soc. Sec.*, No. 14-CV-11146, 2015 WL 404332, at *11 (E.D. Mich. Jan. 29, 2015) ("Plaintiff argues that new evidence showed that his impairments were worse, yet he fails to identify evidence that would support a finding that Plaintiff meets or equals a listing.").

In fact, in concluding that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments, ALJ Xenos stated: "With reference to the claimant's back, there is no medical evidence of nerve root compression with a motor loss, or spinal arachnoiditis, or lumbar spine stenosis with an inability to ambulate effectively, as defined in section 1.00B2b of the 'Listings.'" (R. at 17.) This appears to be a "nod" to Subsections A, B, and C of Listing 1.04. Plaintiff having failed to show how any of the 458 pages of additional records would alter this statement or having failed to show how the requirements of Listing 1.04 were otherwise met, the ALJ's Step 3 conclusion should stand.

**b.    Step 4 RFC exertional and/or postural limitations**

Nor does Plaintiff present a convincing argument that the ALJ's consideration of the additional 458 pages should have resulted in different exertional and/or postural limitations than those assessed at Step 4. In particular, I note that the ALJ expressly considered some of the exhibits that pre-date November 2012, at least where the ALJ directly refers to records from October 2012. (R. at 19-20.)[5] Plaintiff states that records of several of his Step 2 severe impairments "were not even available for the [CEs] in formulating their opinions." (DE 16 at 15.) To the extent Plaintiff is referring to the pre-November 2012 portions of the additional exhibits, she has not specified which records should have resulted in exertional and/or postural limitations different than those assessed by the ALJ at Step 4. At risk of repetition, it is not this Court's role to dig through the record and find them.

Perhaps more importantly, the ALJ also refers to medical records which post-date November 2012. Here, I especially note the myriad references to the 2014 records from Henry Ford Hospital, of which the following include date references:

---

[5] The ALJ refers to an October 2012 denial of shortness of breath (R. at 19, 408) and a same-month denial of psychiatric symptoms (R. at 20). However, while the Court notes that there is an absence of a "psychiatric" component to the October 18, 2012 review of systems, the reviews of systems dated February 14, 2011 and June 30, 2013 each indicate "negative" under this category. (Compare R. at 408, R. at 396, 418).

- The March 2014 report of "[o]ccasional low back pain that is manageable . . . ." (R. at 19, 558; *see also* R. at 752)

- "During the following month," (April 2014) a note that "cervical kyphosis" was "not painful." (R. at 19, 564)[6]

- The May 2014 complaint of pain of 2/10 and neurological examination revealing "good" attention and concentration, although the ALJ terms it a report of "good concentration and memory . . . ." (R. at 17, R. at 19, 573)

- The September 2014 emergency room admission for asthma, although it is not clear to which of Plaintiff's three September 2014 admissions the ALJ is referring (R. at 17, 469, 596-696)

- The September 2014 chest x-ray showing "no emphysema," although the conclusion that "there is nothing that really suggests he has emphysema" appears to relate to his "most recent chest x-ray as well as older studies." (R. at 20, 691.)[7]

- The October 2014 observation that Plaintiff's "[a]sthma is currently suboptimally controlled though not severe . . . ." (R. at 20, 705; *see also* R. at 700, 704)

(R. at 16-17, 19-21.) Despite the ALJ's citations to many of the additional exhibits at issue, her only specific references to the additional exhibits (R. at 318-775) within this statement of error are to the 253 pages of records from Henry Ford Hospital (R. at 464-716), without any explanation of their substance. (DE 16 at

---

[6] While the ALJ's report characterizes this statement as coming from Plaintiff, it appears to the Court that this representation may have been made by Plaintiff's family. (*Compare* R. at 19, 564.)

[7] It seems that Plaintiff underwent chest x-rays on February 23, 2010 (R. at 424), April 10, 2010 (R. at 425, 427), June 30, 2013 (R. at 320-321, 428, 773-774), and September 18, 2014 (R. at 642, 774-775).

14).  As such, she has not shown how the Henry Ford Hospital records from 2014, or, for that matter, any of the 458 additional pages of medical evidence, would have altered the ALJ's assessed exertional and/or postural limitations.  Plaintiff has the burden of proof at Steps 1 through 4 of the sequential process. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Finally, Plaintiff claims that the ALJ's failure to secure an "updated medical expert opinion" is "especially egregious" in light of the ALJ's significant reliance upon Dr. Shaw's report as to Plaintiff's physical impairments.  (DE 16 at 15.) True, the ALJ relied on Dr. Shaw's November 1, 2012 CE report (R. at 301-303) and forms dated November 5, 2012 (R. at 304-307).  For example, the ALJ noted the following:

- Normal range of motion of the cervical spine (R. at 16, 303, 304)

- Steady gait and does not need a walking aid (R. at 17, 21, 303, 307)

- Plaintiff is a high school graduate currently attending Wayne County Community College (R. at 19, 20, 301, 302)

- Thoracolumbar pain, "mild in nature . . ." (R. at 19, 301)

- Asthma is "stable."  (R. at 20, 301)

- No edema, no cyanosis, no clubbing (R. at 20, 302-303)

- No back tenderness, no muscle spasm, negative straight leg raising, normal muscle strength, no sensory loss, and no reflex loss (R. at 21, 303; *see also* R. at 16)[8]

- Can sit, stand, walk, and lift 10-15 pounds without difficulty for eight hours a day, but needs an intermittent change of position (R. at 21, 303)

(R. at 16-17, 19-21.) Plaintiff's blanket statement that "[r]ecord of several of [her Step 2 severe] impairments were not even available for the [CEs] in formulating their opinions[,]" without further specification, does little to inform the Court as to whether the ALJ's consideration of Dr. Shaw's opinions was "egregious"…or not. (DE 16 at 15.) Thus, Plaintiff has not shown how the 458 pages of additions to the record, which span a period from May 2009 through December 2014 (R. at 318-775), would have altered Dr. Shaw's conclusions. Again, a less lackadaisical approach to briefing might have proven beneficial to Plaintiff; however, her failure to identify which records she deems to be so supportive of her case, much less

---

[8] The Court questions the accuracy of at least one of the ALJ's observations here. With reference to Dr. Shaw's report, the ALJ comments that it "indicates no tenderness in the spine and no muscle spasm[,]" and further comments that Dr. Shaw "reported no back tenderness, no muscle spasm, negative straight leg raising, normal muscle strength, no sensory loss, and no reflex loss." (R. at 16, 21.) These appear to be references to various aspects of Dr. Shaw's musculoskeletal and neurological examinations. (R. at 303.) However, while the report, itself, notes "no midline spine tenderness[,]" it also notes, "mild tenderness in the paraspinal muscles . . . ." (R. at 303.) In any event, as Plaintiff's instant statement of error does not argue that the ALJ's consideration of Dr. Shaw's report was *inaccurate*, any such discrepancy in this section of the ALJ's decision will not be given further attention here, and it is assumed to be inconsequential.

what they actually show, will not induce this Court to engage in a treasure hunt for her benefit.

### c. Summary

As illustrated above, Plaintiff has not shown how the 458 pages of additional medical records signaled to the ALJ that Dr. Shaw or Dr. Ahmed would change their November 2012 findings. *See*, *e.g.*, *Kelly*, 314 F. App'x at 831. Thus, she has not shown that the ALJ should have or was required to obtain an "updated medical expert opinion" under SSR 96-6p. Moreover, the ALJ expressly cited from many of the additional exhibits throughout her decision, and Plaintiff has not demonstrated that or how the 458 pages of additional medical records should have resulted in different exertional and/or postural limitations within the RFC. As such the ALJ's assessment of these limitations should be affirmed.

### 2. Whether the ALJ properly assessed Plaintiff's mental RFC?

At Step 2, the ALJ determined that Plaintiff has had severe impairments, including an attention deficit disorder and an obsessive-compulsive disorder. She also explained that Plaintiff's "mental impairments restrict him to simple routine work." (R. at 16.) Plaintiff's second and third assertions of error challenge the ALJ's treatment of these impairments at Step 3 and within the Step 4 RFC determination.

### a. Step 3 - "Paragraph B" and "Paragraph C" criteria

At Step 3, in determining that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, the ALJ stated:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 ["Depressive, bipolar and related disorders"] and 12.06 ["Anxiety and obsessive-compulsive disorders"].  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  . . .

(R. at 17.)  The ALJ then proceeded to conclude that Plaintiff has "a mild restriction" in activities of daily living, "mild difficulties" in social functioning, and "moderate difficulties" with regard to concentration, persistence or pace, and further concluded that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration."  Ultimately, the ALJ concluded that the "Paragraph B" criteria were not satisfied.  (R. at 17-18.)  Then, in concluding that "the evidence fails to establish the presence" of the "Paragraph C" criteria, the ALJ noted that, as to Listing 12.06C, "there is no medical evidence of a complete inability to function outside the area of the claimant's home."  In addition, the ALJ acknowledged that, although Plaintiff is no longer a child, "there is no evidence of marked inattention, marked hyperactivity, or marked impulsiveness."  (R. at 18.)

Citing the ALJ's Step 3 statement that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis[,]" (R. at 18), Plaintiff argues that the ALJ did not

determine his ability "to perform basic work-related activities . . .[,]" as required by SSR 85-15.  Instead, Plaintiff claims that the ALJ cited to 20 C.F.R. 404.1520a's four factors:  (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).

However, as noted above, the ALJ considered the "Paragraph B" criteria. (R. at 17.)  She also expressly acknowledged that:

> The limitations identified in the "paragraph B" criteria are not [an RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by *itemizing various functions* contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).

(R. at 18 (emphasis added).)  Also as noted above, the ALJ asserted within the Step 2 discussion that Plaintiff's "mental impairments restrict him to simple routine work[,]" and the ALJ provided an accompanying Step 4 RFC limitation of "simple, routine work with minimal changes in the work setting[.]"  (R. at 16, 18.)  Thus, the Court should not conclude that the ALJ assumed, in contravention of SSR 85-15, that "failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work."  SSR 85-15 (S.S.A. 1985).  Instead, as illustrated below with respect to Plaintiff's mental RFC, the ALJ's decision "careful[ly] consider[ed] of the assessment of RFC."  *Id.*

### b. Step 4 – mental RFC

Plaintiff claims that the ALJ's Step 4 RFC assessment does not consider the impact of his Step 2 severe mental impairments - attention deficit disorder and obsessive compulsive disorder - upon his functional ability. (DE 16 at 18.) As the applicable SSR provides:

> As with exertional capacity, nonexertional capacity must be expressed in terms of work- related functions. For example, in assessing RFC for an individual with a visual impairment, the adjudicator must consider the individual's residual capacity to perform such work-related functions as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace. In assessing RFC with impairments affecting hearing or speech, the adjudicator must explain how the individual's limitations would affect his or her ability to communicate in the workplace. Work-related mental activities generally required by competitive, remunerative work include the abilities to: *understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.*

SSR 96-8P (S.S.A. July 2, 1996) (emphases added).

Acknowledging that the ALJ's Step 4 RFC determination contains a limitation to "simple, routine work with minimal change in the work setting[,]" (R. at 18), Plaintiff claims that the ALJ's decision does not address either his abilities in these (italicized) areas or "the medical evidence the ALJ relied upon in coming to those conclusions." (DE 16 at 19-20.) Plaintiff again characterizes the ALJ's alleged error as "egregious," as Plaintiff and his mother each testified regarding his "inability to concentrate," and his mother testified "regarding Plaintiff's loss of a

job due to his inability to 'keep up'" and poor performance in even the "simplest job" collecting carts at a Kroger supermarket. (DE 16 at 20; R. at 795.)

Nonetheless, the Court should conclude that the non-exertional mental limitations imposed by the ALJ – "simple, routine work with minimal changes in the work setting" - are supported by substantial evidence. In her review of the record evidence, the ALJ made the following specific statements, which are supported as indicated in italics:

> "The claimant's mother testified that the claimant will not use regular silverware, will not eat on regular plates, will not take out garbage, and touches everything with tissues and napkins. Her testimony suggests a substantial obsessive-compulsive disorder. However, in Exhibit l8F, it was reported that the claimant is not nervous or anxious. Psychiatric symptoms were denied in a Review of Systems in October, 2012 in Exhibit l7F."

> *This references Page 20 of the hearing testimony (R. at 797); the January 13, 2014 notes (apparently from therapist Roskelly) that Plaintiff "is not nervous/anxious[,]" (R. at 444); and, while the Court notes that there is an absence of a "psychiatric" component to the October 18, 2012 review of systems, the reviews of systems dated February 14, 2011 and June 30, 2013 each indicate "negative" under this category. (Compare R. at 408, R. at 396, 418).*

> "The claimant testified that he has not yet seen a psychiatrist. It seems that if the claimant really had severe emotional problems, he would have seen a psychiatrist. It is significant that there is no evidence of any mental health treatment in this case."

> *This is supported by Pages 12 and 15 of the hearing testimony. When asked, "Have you seen a psychiatrist ever?" Plaintiff answered, "I'm supposed to but not yet." (R. at 789.) Relatedly, he testified that he has an appointment scheduled with a psychiatrist; however, he had*

> "no clue" when, as his mother made the appointment for him. (R. at 792.)

> "Findings in Exhibit 19F include a normal mood and affect, an average fund of information, full orientation, and normal behavior. Page 110 of that exhibit states that he has good concentration/ attention and that his memory is intact. Exhibit 17F states that the claimant is alert and fully oriented. At the hearing, the claimant presented as articulate, attentive, and well-groomed; no tics, shaking, or eye-blinking was observed."

> *This is supported by Exhibit 19F's references to "normal mood and affect," (R. at 473, 585, 600, 636, 647) and "behavior is normal," (R. at 473, 600). In addition, the May 8, 2014 neurological examination revealed, in part: "The patient is alert and oriented. Attention and concentration are good. Speech is fluent with no dysarthria and no aphasia. Recent and remote memory function is intact[.] Fund of knowledge is within low average range[.]" (R. at 573.) Furthermore, Exhibit 17F includes multiple references to physical examinations noting that Plaintiff was "oriented," and/or "alert." (See, e.g., R. at 371, 375, 378, 381, 385, 389, 393, 397, 401, 405, 409, 419.)*

(R. at 20.) Thus, it is clear that the ALJ, if not expressly then at least implicitly, considered Plaintiff's abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8P.

In essence, Plaintiff asks this Court to adopt his and his mother's testimony as the last word on his mental limitations and RFC, notwithstanding substantial, contradictory evidence from the medical record. The Court will neither re-weigh the evidence, ignore substantial evidence relied upon by the ALJ, nor second-guess

an ALJ's findings which are well within the reasonable outcomes supported by the record as a whole. Likewise, it will not "resolve conflicts in evidence," *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007), "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

Moreover, in this statement of error, Plaintiff has not suggested what additional limitations should have been included beyond those assessed. (DE 16 at 17-20, DE 17 at 14.) Stated otherwise, he refers to his and his mother's testimony about his concentration and/or job loss, but he does not explain how his "inability to concentrate" or "inability to 'keep up'" require a mental RFC other than "simple, routine work with minimal changes in the work setting[.]" (R. at 18.) As such, the ALJ's mental RFC assessment should be affirmed.

### 3. Whether a function-by-function assessment is required?

Plaintiff's final assertion of error is that the ALJ did not comply with SSR 96-8p when she failed to include "the *required* 'function-by-function' assessment." (DE 16 at 20-22 (emphasis added).) By way of background, after reviewing several of Plaintiff's medical records, many of which were contained within the aforementioned additional 458 pages of medical records, the ALJ stated: "Giving some credence to the testimony, the undersigned finds that the claimant has only a sedentary work capacity." (R. at 19-21.)

Here, Plaintiff argues that ALJ Xenos did not comply with SSR 96-8p and/or 20 C.F.R. §§ 404.1545, 416.945, asserting that "the ALJ merely relies on the State agency medical consultant's review of the Plaintiff's records and her opinion that Plaintiff is capable of performing sedentary exertional level work with additional postural and environmental limitations[,]" and that "[n]owhere within the ALJ's conclusions ([R. at] 18) does she discuss each function separately with what medical documentation [s]he relied upon."  (DE 16 at 21-22.)  In other words, aside from her record reference to the Step 3 "paragraph B" and "paragraph C" criteria, it appears Plaintiff is challenging ALJ Xenos's assessment of his exertional limitations.  *See* 20 C.F.R. §§ 404.1529a, 416.929a (exertional limitations include "sitting, standing, walking, lifting, carrying, pushing, and pulling").

"Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ *to discuss* those capacities for which no limitation is alleged."  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (emphasis added).  Instead, the ALJ "'need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'"  *Id.* (quoting *Bencivengo v.*

*Comm'r of Soc. Sec.,* No. 00–1995, 251 F.3d 153, slip op. at 5 (3d Cir. Dec. 19, 2000)). Here, the ALJ did so.

SSR 96-8p's directive that "[e]ach function must be considered separately . . . [,]" does not mean that each of the "seven strength demands" must be discussed in detail. While "'a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado*, 30 F. App'x at 547 (quoting *Bencivengo v. Commissioner of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (unpublished)). In fact, in a previous case filed by Plaintiff's counsel, this Court noted it "has repeatedly held that an ALJ need not address every possible work-related function." *Gilbert v. Comm'r of Soc. Sec.*, No. 15-CV-11325, 2016 WL 8114195, at *5 (E.D. Mich. Apr. 29, 2016) (report and recommendation of Majzoub, M.J.), *adopted* 2016 WL 4072476 (E.D. Mich. Aug. 1, 2016) (Lawson, J.). *See also Bis v. Colvin*, No. 14-CV-11530, 2015 WL 1849400, at *13 (E.D. Mich. Apr. 22, 2015) (citing *Delgado* in the context of a "function-by-function analysis").

Here, the ALJ concluded that Plaintiff's RFC included the exertional limitations of sedentary work with the additional exertional limitations that Plaintiff "can occasionally operate foot/leg controls[,]" and "needs to alternate between sitting and standing at will at the workstation." (R. at 18.) As noted above, Plaintiff has failed to show that the 458 pages of additional medical records

25

should have resulted in different exertional and/or postural limitations within the RFC. In fact, Plaintiff's only record citations within this assertion of error are to the ALJ's decision, not to any of the 541 pages of medical records. As such, Plaintiff has failed to show that the ALJ did not comply with SSR 96-8p in her consideration of the "seven strength demands" – sitting, standing, walking, lifting, carrying, pushing, and pulling.

### G. CONCLUSION

"[D]uring the first four steps, the claimant has the burden of proof[.]" *Walters*, 127 F.3d at 529. Plaintiff has not shown remandable error at Step 3 or within the Step 4 RFC. In sum: **(1)** Plaintiff has failed to show that the ALJ should have or was required to obtain an "updated medical expert opinion" under SSR 96-6p or that the 458 pages of additional medical records should have resulted in different exertional and/or postural limitations within the RFC; **(2)** the ALJ properly assessed Plaintiff's mental limitations at Step 3 and within the Step 4 RFC determination; and **(3)** Plaintiff has failed to show that the ALJ did not comply with SSR 96-8p in her consideration of the "seven strength demands."

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 16), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:                     s/Anthony P. Patti
      July 31, 2017

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that this Notice was electronically filed, and the parties and/or counsel of record were served on July 31, 2017.

s/L. Hosking
Case Manager Generalist